Speed & Worthington vs. Crawford.

---

CASE 52—PETITION ORDINARY—OCTOBER 22.

# Speed & Worthington vs. Crawford.

APPEAL FROM JEFFERSON CIRCUIT COURT.

*Section* 41 *of article* 4 *of the Constitution of Kentucky* relates exclusively to such police courts (and the officers of such courts, including judges, clerks and marshals,) as had been established in any city or town prior to the adoption of the constitution; and the *6th section of article* 6 was intended to refer to all officers of towns and cities whose offices might be created or established after its adoption. (2 *Met.*, 576.)

Officers for cities and towns shall be *elected* for such *terms* and in such manner as may be prescribed by law. (*Constitution of Ky.*, art. 6, sec. 6.) Where a statute creates the offices of "members of a police board" of a city, who are required by the act to reside in the city, to be qualified voters thereof, and to keep their offices therein, and whose duties relate to matters exclusively local, confined to subjects pertaining to the "police department" of the city, they should be *elected* by the voters of such city. If the statute direct their *appointment* by the Governor, or by a judge of a court, it is unconstitutional.

An *appointment* to an office by the Governor is not the same thing, in a constitutional sense, as an *election* to an office.

The word *term*, with reference to the tenure of office, is used in the constitution to designate a *fixed and definite period of time*. A statute creating the offices of members of the police board of a city, which provides that they may be removed at the pleasure of the chancellor, and that they must be removed whenever by a change of political opinion on their part, or on the part of the mayor, they cease to disagree, fails to comply with the requirements of the constitution, and provides for a tenure of office unknown to that instrument.

Power is given by a statute to the police board of a city to appoint a chief of police, assistant chiefs of police, supernumerary watchmen, and fill vacancies in those offices until the next general election, to employ a clerk, and also to try the "chief or assistant chiefs of police, or any watchmen, or any other member of the police force, now or hereafter holding office in said city, for any violation or neglect of duty, and remove them from office or suspend them for such time as the board may determine." *Quere*. Is the act unconstitutional upon the ground that it provides for a blending of executive and judicial powers? The court say they are not prepared to decide that it is; and refer to Story's commentaries on the constitution for a satisfactory exposi-

Speed & Worthington vs. Crawford.

tion of the clause on which the objection is founded, and especially to the chapter on the "distribution of powers," secs., 517 &c.

When the General Assembly, by a vote of two-thirds of all the members elected to each house, extends the session beyond sixty days, the constitutional restriction as to the length of the session is effectually removed and can operate no longer. After the removal of the restriction the General Assembly may thenceforward, by the concurrence of a *majority*, protract the session from time to time as the necessities of the business before them may seem to require.

CALDWELL and BULLITT for appellants.

E. S. WORTHINGTON, on same side.

S. S. NICHOLAS and CHAS. RIPLEY, for appellee.

JUDGE DUVALL DELIVERED THE OPINION OF THE COURT:

This is an appeal from a judgment of the Jefferson circuit court, declaring unconstitutional an act of the General Assembly, approved February 29, 1860, entitled "an act to provide a more efficient police department in the city of Louisville." (2 *vol. session acts* 1859–60, *page* 510.)

The third section of the act provides, in substance, that the chancellor of the Louisville chancery court shall, within twenty days after the passage of the act, appoint two discreet persons, qualified voters of said city, as members of a *police board for said city;* and may remove them at any time, and appoint others, or fill vacancies occurring by death, resignation, or otherwise: *Provided*, That when the mayor of the city shall belong to the Democratic party the said appointees shall be of the opposite political party ; and when the mayor shall belong to the party opposed to the Democratic party, the appointees shall belong to the democratic party ; and they shall be removed as often as may be necessary to carry out this provision : And, *provided further*, That if the chancellor should fail to make said appointments within the time mentioned, all the powers conferred upon him shall be exercised by the governor.

By other sections of the act power is conferred upon the mayor, with the advice and consent of other members of the board, to appoint, every two years, a chief of police, and such supernumerary watchmen as may be deemed proper; they may also, if they deem it advisable, appoint one or more as-

sistant chiefs of police, and they have power to fill vacancies in those offices, until the next general election; power is also given the board thus constituted to employ a clerk, to try the "chief or assistant chiefs of police, or any watchman, or any other member of the police force, now or hereafter holding office in said city, for any violation or neglect of duty, and remove them from office, or suspend them for such time as the board may determine."

By the judgment of the court below the act in question was held to be in conflict with the constitution in the following particulars :

1. In providing for the *appointment*, by the chancellor or governor, of the two members of the police board, instead of requiring them to be *elected*.

2. In not prescribing the *terms* for which those officers were to be elected.

3. In conferring upon them powers which are essentially executive, and other powers which are essentially judicial.

These several objections to the validity of the act, indicating, as they do, the only questions necessary to be considered in determining the propriety of the judgment sought to be revised, will be briefly noticed in the order in which they are. stated.

1. *Article* 6, *section* 6, *of the Constitution*, provides that "officers for cities and towns shall be *elected* for such *terms*, and in such manner, as may be prescribed by law." The first inquiry then is, to what class of offices do the offices created by the act in question belong? Are the two members of the police board, whom the chancellor or the governor is authorized to *appoint*, to be considered as embraced by the class of officers. designated in the provision just quoted as *"officers for cities and towns ?"* If so, it is perfectly plain that the legislature had no power, under this imperative mandate of the fundamental law, to do more than to prescribe the manner in which they were to be *elected*, and the *terms* of their office.

"All civil officers for the commonwealth at large shall reside within the State; and all district, county, or town officers,

within their respective districts, counties or towns, (trustees of towns excepted,) and shall keep their offices at such places therein as may be required by law." (*Sec.* 11, *art.* 8.)

This, and other provisions of the constitution, show, with absolute certainty, what particular officers were intended to be embraced within each of the four classes here enumerated. (*Articles* 3, 4 *and* 6.)

The members of the police board are, by the express terms of the act, required to reside in the city of Louisville, to be qualified voters of the city, and to keep their offices therein. Their powers and duties relate to matters exclusively local, being confined, as is indicated by the title of the act, to subjects pertaining to the "police department" of the city. Would it not, therefore, be a striking and palpable abuse of terms to say that these officers were either state, district or county officers, within the meaning of the several constitutional provisions referred to?

Regarding them then as belonging to the class of officers described in the 6*th section of article* 6*th*, the question is whether the requirements of that section have not been disregarded in those provisions of the act under consideration, which authorize the appointment of these officers by the chancellor or governor. In other words, is an *appointment* to an office by the governor the same thing, in a constitutional sense, as an *election* to an office? The counsel for the appellants have sought to maintain the affirmative of this proposition, in an argument evincing great research and ingenuity. They have endeavored to show, and as we might admit, have succeeded in showing, that among lexicographers and theologians the *meaning* of the word "*elect*" is "to choose," to take by preference, &c., and that there is nothing in its accepted meaning which necessarily signifies a popular *election;* and, furthermore, that in the constitution of the United States, and in the two former constitutions of this State, the words "choose," select, appoint, and elect, were in some instances used interchangeably.

But, as was well suggested in the opinion delivered by the circuit judge, the question is not what is the primary or best definition of the term, nor in what sense it may have been

heretofore used, but rather what did the convention intend by the use of that term in the present constitution.

To curtail the power of *appointment* to office, by the executive, and to extend the election principle, was one of the leading objects of the authors of the new constitution. This purpose was not more distinctly manifested in the expressions of public sentiment, which led to the call of the convention, than it has been in the provisions of the instrument itself. Almost all judicial and ministerial offices, as well as many of the executive offices, had been previously filled by *appointment*. The great object of the change in the system was to refer to the people the choice of their officers of all grades and classes, whether State, district, county, or city or town officers. That choice was to be made through the instrumentality of an *election*. Hence the words "elect" and "election" will be found to have been used by the framers of the present constitution in a sense as radically different from that of the words "appoint" and "appointment," as the present organic law is from the system which it superceded. No single instance can be found in which these words are employed to convey the same idea. On the contrary, there are cases in which they are used in contradistinction to each other: By *article 3, section* 25, it is provided, in substance, that the higher State officers shall be *elected*, but inferior State officers, not specially provided for, shall be appointed *or* elected. And by *article 6, section* 10, the general assembly may provide for the election *or* appointment of county or district officers not specially named. But we forbear to refer to other illustrations. Wherever the selection of an officer is referred to the governor or other functionary it is called an *appointment*, and wherever such selection is referred to the people, or to an organized body, (as the legislature, for instance,) it is called an *election*. The constitution affords no exception to this rule. And yet it is insisted that the *6th section of article* 6 should be interpreted as if it read, "officers of towns and cities shall be *elected* by the *governor*, (or chancellor,) for such terms and in such manner as may be prescribed by law." Such a departure from the uniform use and meaning of terms would have been indefensible,

as well as destructive of the symmetry and consistency of the whole instrument.

But the construction contended for is opposed to the fundamental ideas of policy on which all the provisions of the constitution relating to the selection of civil officers are founded. Why should the inhabitants of a district be allowed the right of choosing, by election, their own local, judicial, and ministerial officers, such as justices of the peace and constables, and the right denied to the inhabitants of the most populous cities of selecting, in the same mode, their most important municipal functionaries, clothed, as they may be, with powers upon the proper exercise of which the peace, good order, and well being of the local community may greatly depend? Should the courts, even if the question were doubtful, incline to favor such a construction of the provision under consideration, as would invest the executive of the State or the judge of a court with power over the highest and most potent officer of a city, which none but the people can exercise with respect to the most insignificant officer of a county or district? It is a sufficient answer to these questions to say that the convention seem to have perceived no necessity for a discrimination so anomalous and so directly opposed to the plan and spirit of the government they designed to establish by the present constitution, and they therefore omitted to embody in it any single provision, authorizing the deduction that the inhabitants of towns and cities should be denied a privilege which was extended to all other citizens of the commonwealth—the privilege of electing their own officers—and that they should be subjected to a power from which all other citizens were exempted, except in the few cases expressly provided for—the power of executive appointment. In the case of the *Trustees of Owensboro vs. Webb*, (2 *Met. Ky. Rep.*, 576,) it was decided that *sec.* 41 *of art.* 4 related exclusively to such police courts, (and the officers of such courts, including judges, clerks, and marshals,) as had been established in any city or town prior to the adoption of the present constitution, and that the 6*th section of article* 6 was intended to refer to all officers of towns and cities whose offices might be created or established after

its adoption. It would result, from the view contended for by the appellants, that although the judges, clerks, and marshals of police courts, which had been established in any city or town prior to the adoption of the constitution, must be *elected* in the manner prescribed in *section* 41 *of article* 4, yet the same classes of officers of similar courts since established in any city or town, may be *appointed* by the governor, or by any judicial officer to whom the legislature might see fit to delegate the power of appointment.

2. We are next to inquire whether the act sufficiently, or at all, prescribes the *terms* for which the officers in question are to hold their offices?

We have already seen, that by the provisions of the act these officers may be removed at the pleasure of the chancellor, and that they must be removed whenever, by a change of political opinion on their part, or on the part of the mayor, they cease to disagree. Such is the peculiar tenure by which these offices are to be held. Can it be said that the incumbents hold their offices for a *term* within the well understood and plain import of all the provisions of the constitution which prescribe the term of the various offices therein mentioned, and which authorize the legislature to prescribe, by law, the terms of other offices? We think not. It is deemed unnecessary to refer specially to the numerous provisions alluded to for the purpose of demonstrating that the word *term* is uniformly used to designate a *fixed and definite period of time*. (*Trustees of Owensboro vs. Webb*, *supra*, and *Barbee vs. Speed MS. opinion, June Term*, 1855.) Nor shall we stop to enlarge upon the objects and motives of the convention in adopting the policy which those provisions were intended to embody and carry out. They could not be made more manifest by comment. It is sufficient to say, upon this point, that we concur with the circuit judge in the conclusion that the act fails to comply with the requirements of the constitution, in providing for a tenure of office, unknown to that instrument, and opposed not only to its letter but to its spirit and policy.

3. In regard to the third ground of objection to the validity of the act—that it provides for a blending of executive and ju-

dicial powers—we have had more difficulty in concurring in the view taken by the court below, and are not prepared to decide that the objection is maintainable.   For a satisfactory exposition of the clause of the constitution on which this objection is founded we refer to the commentaries on the constitution of the United States by Judge Story, and especially to the chapter on the "distribution of powers."   (*Sec.* 517, *&c.*)

A construction which would deny to the legislature the right of clothing the judicial tribunals with certain minor functions, that are in their nature strictly executive, would greatly embarrass if it did not defeat, to some extent, the practical workings of our system.

It is proper that another ground of objection which was relied on by the appellee should be briefly noticed.   It is insisted that the constitutional term of the session of the legislature had expired before the act in question was passed, and that for that reason the proceedings of that body were all void.

The argument in support of this position proceeds, as we think, upon a mistaken view of the effect of the provision of the constitution which declares that a session shall not "continue *beyond* sixty days unless by a vote of two-thirds of all the members elected to each house."   The General Assembly which passed the act in question, did, by a vote of two-thirds of all the members elected extend the session beyond the sixty days.   The requirement of the constitution was thus strictly and fully complied with.   The restriction which it imposed was effectually removed, and it could operate no longer.   After the removal of the restriction, by an extension of the session in the mode prescribed, the General Assembly were thenceforward competent, by the concurrence of a majority, to protract the session from time to time as the necessities of the business before them might seem to require.

But for the reasons stated we are opinion that the act in question was properly held inoperative, and the judgment is therefore *affirmed.*