### EDNAH A. M. STOKES *v.* JOHN D. SANBORN.

A proceeding under the bastardy act is, in substance, a civil suit, to which the respondent may appear and plead by attorney; a trial be had without his personal presence; and a judgment be rendered upon default.

Where, on default, a judgment was rendered, that the putative father should pay to the mother fifty dollars and costs, and a certain sum per week until the child was seven years old, it was *held* that an action of debt would lie to enforce such judgment.

THIS was an action of debt upon an order or judgment of the Court of Common Pleas, charging the defendant, as the father of a bastard child, with certain sums for its expenses and maintenance. There is also in the writ a count for $200, for food, drink, washing, lodging, medicines, medical attendance, care, and expenses, and support of the defendant's infant child at his request.

The writ is dated Dec. 26, 1863; and now the parties agree upon the following facts, to wit:

That the plaintiff, a single woman, on the twenty-second day of Feb. 1858, she being then and ever since of Epping, in said county, exhibited her complaint in writing, in due form, upon oath, to a justice of the peace for said county, wherein she complained that she was pregnant with a child, which, if born alive, would be a bastard; and that the same was begotten by the defendant, then of South Newmarket, in said county, on the twenty-third day of August, A. D. 1857, at the house of Joseph Stokes, in said Epping; that a warrant was duly issued by said justice, upon said complaint, and the defendant arrested thereon; that, after due and legal proceedings had upon said complaint before said justice, the same was duly entered at the April term of the Court of Common Pleas for said county, A. D. 1858, the defendant appearing and answering thereto, by his counsel, Alva Wood, Esq., an attorney of said court, and the said complaint was duly continued to the November term of said court, A. D. 1858,—the defendant giving the requisite bonds for his appearance at that term; that, at said November term, said defendant appeared by his said counsel, but no proceedings were had

touching said bond at that term, and no new bond was required or given, and said complaint was duly continued to the April term of said court, 1859 ; at which term, the defendant's counsel withdrew his appearance ; and, upon motion of complainant's counsel, the defendant, as principal, and his sureties upon said bond were called and defaulted, and the following order was made by the court, to wit : " *Ordered* that the respondent pay $50 for expenses to this time, and 50 cts. per week until the child is seven years old, pay costs of prosecution, &c. ;" that the costs of prosecution were taxed at $46.67 ; that no part of said order has been complied with ; that the complainant, (the plaintiff) has always taken care of and maintained said child, which is still living ; and that no town has ever maintained or provided for the child.

And it is agreed that the questions in this case may be reserved for decision at the Law Term ; and that, if in the opinion of the court the action can be maintained, such judgment may be rendered as the court shall consider the plaintiff entitled to ; and that, if in the opinion of the court the action cannot be maintained, the plaintiff may be nonsuited.

*Small*, for plaintiff.

I.   The order in question is in effect a judgment, and debt will lie upon it.   Comp. Stat. ch. 72, sec. 5 ; 2 Bouv. Law Dict. 269, Tit. Order of Affiliation.   The bond was void after the term preceding the judgment.   *Dunbarton* v. *Palfrey*, 27 N. H. 171.

*Blackstone* says :   " Every man is bound and hath virtually agreed to pay such particular sums of money as are charged upon him by the sentence, or assessed upon him by the interpretation, of the law   *   * Whatever the law order one to pay becomes instantly a debt, which he hath before contracted to discharge."   3 Chitt. Bl. 158.

An action of debt will lie upon an order of the court of session in favor of one whose land has been injured by the location of a turnpike. *Rice* v. *Turnpike Co.*, 4 Pick. 130 ; and upon a decree of a court of chancery, for the payment of money.   *McKim* v. *Odom*, 12 Me. 96 ; and in alimony, decreed by the court upon a sentence of divorce. *Howard* v. *Howard*, 15 Mass., 196 ; 2 U. S. Dig. 21, Title, Debt.

II.   The action was well brought by the mother.

III.   The measure of damages should be the amount due at the date of the writ, according to the order of the court, with interest.

*Wood*, for defendant.

The defendant cannot be liable, unless it be upon the order, as there is nothing to show in the case, that he is the father of the child, and, if there were, he could not be liable.   2 Kent Com. page 216 ; *Hudson* v. *Hills*, 8 N. H. 417.

Sec. 3, chap. 68, Revised Stat. page 141, provides that the issue shall be chargeable or not chargeable.   To authorize the court to make any

order in the case, that question must first be determined.   Sec. 5, of same chap. page 142.   In this case the defendant becomes defaulted, without the issue being found.   No further proceedings could then be had, and the court had no authority to make the order.   It was made without authority, and was not binding on this defendant.   *Commonwealth* v. *Clark*, 2 Mass. 156.   If the court had authority to make the order it can be inferred only by commitment.   Revised Stat., page 142, sec. 5; *Woodcock* v. *Walker* 14 Mass., 386.

Actions upon judgments can be tried by the court, and must stand or fall upon the record as it stands.   No aid can be derived from outside facts.   How, then, in this order?   Does it stand in the form of a judgment to be inferred by action of debt?   Is there any fixed and definite sum due on the judgment?   When the order was made, the defendant was out of court, and no further proceedings could be had, but to sue the bond.   If the order be in the form of a judgment, and can be the foundation of a suit, how can it be determined, how much the plaintiff could recover on the order?   Suppose she had, immediately after the court, commenced an action upon the order, how could the amount for boarding the child be determined, since it was entirely uncertain how long the child would live?   An execution could not have been issued upon the order.   The amount is uncertain.

BELLOWS, J.   In *Marston* v. *Jenness*, 11 N. H. 156, after a careful examination of our statute upon this subject, it was decided, "that the rules of civil proceedings are applicable to complaints under this act, and that they are substantially civil suits, although some of their forms are adopted from the criminal law."   And this decision has been followed in *Harris* v. *County of Sullivan*, 15 N. H. 81, and *Little* v. *Dickinson*, 29 N. H. 56, so that this doctrine may be considered as settled in New Hampshire.

Indeed, it is quite obvious, that the object of the law is to redress a civil injury by compelling the putative father to aid the mother in the support of the child, and to indemnify the town, chargeable with its support, against the expenses which may be incurred thereby; giving to the court the power to require of the father or the mother, or both, security against this liability.

For the criminal offence both parties are liable to indictment, which is in no way affected or barred by the order or sentence under the law in question.

Some of the forms of this proceeding, it is true, are borrowed from the criminal law, but these are simply with the view of giving a more summary and stringent character to the process, by which the respondent is brought into court and held to answer to the charge; leaving it, in most other respects, to stand upon the footing of ordinary civil causes.   It is therefore held, in *Marston* v. *Jenness*, and *Little* v. *Dickinson*, before cited, that the respondent is not arraigned but appears and pleads by attorney.   Under a similar law in Massachusetts, this is held to be a civil proceeding.   *Wilbur* v. *Crane*, 13 Pick, 284; *Williams* v. *Campbell*, 3 Met. 209.

So in *Mariner* v. *Dyer*, 2 Greenl. 165 ; *Hinman* v. *Taylor*, 2 Conn. 357 ; *Robie* v. *McNiece*, 7 Vt. 419 ; *Gray* v. *Fulsome & al.*, 7 Vt., 452 ; *Smith* v. *Lint*, 37 Maine Rep. 546.

It being settled, then, that proceedings under this law are to be regarded as civil actions, the question is, whether there is anything in their nature, or anything to be implied from the provisions of the statute, that requires the personal presence of the respondent at the trial, or the rendition of judgment, or that takes such cases out of the general rule, that judgment in civil actions may be rendered upon default.

The service in these cases is by the arrest of the body, and security taken for the appearance of the respondent at the proper court, by bond ; and, although the form of the proceeding is more summary, yet in substance it is like the cases of arrest and bail in ordinary civil process ; and, upon a careful consideration of the question, we are of the opinion, that a trial and judgment may be had without the personal attendance of the respondent, or that judgment may be rendered on default. Indeed, it may be regarded as settled here, that the respondent need not be arraigned, but may plead by attorney, from which a strong inference arises that his presence in person is not necessary.

In other States where their statute provisions in this respect are much like our own, a similar doctrine prevails, and judgments are rendered on default. *Blood* v. *Morrill & al.*, 17 Vt., 598, 605 ; *Mariner* v. *Dyer*, 2 Greenl. 165. So it would seem, in England, the personal presence of the respondent is not necessary. 1 Burns . Jus. 254.

In *Jordan* v. *Lovejoy*, 20 Pick. 86, it was held that there can be no trial until the respondent has appeared to answer, and no adjudication without a trial ; and Shaw, C. J., says, that this sufficiently appears from the statute, though in many respects obscure. It appears, however, that, in *Hodge & Wife* v. *Hodgdon & al.*, 8 Cush. 294, where there was a verdict against the respondent, and exceptions saved, and, afterwards at a subsequent term, judgment was rendered and an order made, although the respondent was not present, the court held that there was a breach of the bond, as the respondent was bound to take notice of the order, and pay the sum adjudged.

But, however the rule may be in Massachusetts, upon their statute, we think there is nothing in ours inconsistent with rendering judgment against the respondent, on default, as in other civil causes. Indeed, as the security is by bond, and as judgment upon that should be only for the sum equitably due, it is obvious that it is most convenient, if not indispensable, that the order of filiation, together with the amount to be paid, should be made before the bond is sued. In the English practice, as distinctly appears from the forms of the order of filiation and maintenance, as given in 1 Burns' Justice, 258, the order is made on default of the respondent, after summons, and in his absence.

The remaining question is, whether the action of debt lies upon this order or judgment ; and this raises the general question, whether the means of enforcing the order are limited to a suit on the bond ; or, in case respondent is surrendered up, to his commitment until the order be complied with. There is no doubt that debt is the appropriate form of

action to enforce the payment of judgments and decrees in all civil causes; and, as the order in cases of this sort has the character of a judgment, debt is the proper remedy, unless, by implication, the remedy be restricted to a suit upon the bond, or to the commitment of the respondent.

In section 5, ch. 72 of the Compiled Statutes, the order to be made in case the respondent is found chargeable is prescribed; and it is provided, that any person who shall neglect or refuse to obey such order may be committed until the same *is* obeyed; and this also is borrowed from the criminal law. From an examination of this statute, it is quite clear, that the remedy is not restricted to the method therein pointed out, unless it appear that the duty and a remedy for it were created by the same statute.

In the case of *State* v. *Wilson*, 43 N. H. 419, it is laid down, that the general rule of law and construction undoubtedly is, that, where an act of Parliament does not create a duty or offence, but only adds a remedy to a duty or offence which existed before, it is to be construed as cumulative. A similar doctrine is also found in *Chesley* v. *Smith*, 1 N. H. 22, where it is said, that, if a new right is conferred upon an individual by a statute which at the same time provides a remedy, such remedy alone may be pursued. The same general doctrine is laid down in *Castle's Case*, Cro. Jac. 643; *Rex* v. *Robinson*, 2 Burr. 799, where the subject is much considered by Lord Mansfield. That case was an indictment for refusing to obey an order of the Court of Sessions, to pay a weekly sum for the support of two of the respondent's grand-children. It was held, that the indictment was well,—although the statute of 42 Eliz. prescribed a particular proceeding in a summary way,—upon the ground that the offence was antecedently punishable by a common law proceeding, viz, by indictment for disobeying the order of sessions, and the remedy, prescribed by the 42 Eliz. was, therefore, to be regarded as cumulative, and the case of *Rex* v. *Davis*, 28 Geo. 2, was cited as directly in point. That was an indictment for refusing to receive a pauper, who, by order of the Sessions, was directed to be removed to the place of her last legal settlement, as the justices were empowered to do by statute of 13 and 14, Car. 2; but no mode of punishment for refusing to receive and provide for such pauper was provided by that act. Afterwards, by 3 & 4 W. & M. it was enacted that the person who so refused to receive such pauper should forfeit £5, to be recovered in a summary way. But the court held, that the offence was *indictable*, not being a new offence created by the statute of 3 and 4, W. & M.

By the Provincial Statute of 1701, the Quarter Sessions was empowered to make an order to charge the reputed father, with the assistance of the mother, with the maintenance of a bastard child, and to give security to the town for the same, or be committed to prison, until he find such sureties as the Sessions require. The act also provides, that, if the mother has been constant in her accusation, she may be examined on oath. Provin. Laws, 17.

The provisions of our present law, Comp. St. ch. 72, are much the same; although the mode of proceeding is here marked out, as it is not

by the Provincial Act above cited.    The present act also  provides that
the court may order the father to pay such sum as may  be  deemed  rea-
sonable, to the mother  or to the  selectmen of  the ·town  liable for  the
child's support, for its maintenance ; and provides, that " any person who
neglects or refuses to obey any such order  may be  committed  until the
same is obeyed.

By the English  statute of 13 Eliz. ch. 3, (1 Burns' Jus. 250,) two
justices of  the peace, one of  whom to be of the quorum,  were empower-
ed to charge the mother or reputed father of a bastard  child,  with  the
payment of  money weekly, or other sustentation, for the  relief of such
child ; and, if,·upon notice of such order, the father or mother shall not
perform it, then the party making such default to be committed to  the
common jail, there to remain until security be given to perform such or-
der, or else personally to appear at the next general session of the peace,
to abide such order as the said justices of  the peace, or the  more part of
them, shall take, &c.

By statute of 3 Car. 1, ch. 4, sec. 15, (1 Burns' Jus. 252,) the Court
of Sessions were empowered to make an original order  of bastardy, as
appears by the case of  *Rex* v.  *Greaves*, Doug. 610 ; but had no pow-
er to order the father to give security to perform such order, as held in
*Rex* v. *Price*, 6 T. R. 147, and *Rex* v. *Fox*, there cited.

By laws of 13 and 14 C. 2, ch. 12, sec. 19, it was provided, that,
where putative fathers and mothers of bastard children run  away, leav-
ing such children a burden upon the parish, the church wardens and over-
. seers of  the poor were empowered to take and seize so much of the goods
and chattels, and receive so much  of  the rents or profits of  the lands, of
such putative father or lewd mother, as shall be ordered by any two jus-
tices of  the peace, for or towards the discharge of the parish, to be con-
firmed at the Sessions, for the bringing up of  such child, and  the  Ses-
sions may make an order for the church wardens or overseers of the poor
of such parish to dispose of such goods by sale or otherwise, or so much
as the court may think fit ; or to receive so much  of  the rents  and prof-
its of  the lands as the Sessions shall order.

By law of 49  Geo. 3, ch. 68, sec. 1, the power of the justices is ex-
tended so as to include the power of requiring payment of  the expenses
incident to the birth of such child, and the payment of the  costs of  ap-
prehending and securing the putative father, and of the order of filiation,
and further provisions were made for the more effectually enforcing such
order.

From this survey of the English Statutes, it is apparent, that,  long
before the provincial legislation of 1701, it was made the duty of the
putative father of an illegitimate child to contribute to its maintenance ;
and that duty might be enforced in a summary way by commitment to
prison, and by distress of goods, and a levy upon  the  rents of real es-
tate, to be held as in the case of statutes merchant, and  statutes staple.
And these statutes of 13 Eliz. 3, ch. 1, and 13 & 14, ch. 2, were in
force here at the establishment of our  Provincial Government :   *State*
v. *Rollins*, 8 N. H. 551 ; and, therefore, the duty clearly existed at the
time of the passage of our Provincial Statute of 1701, and of ch. 68 of

the Revised Statutes, (Comp. St. ch. 72,) both of which are before cited. It is true, that these proceedings were summary in their character, arising from the fact, to a great extent, that the orders of the justices were not regarded as judgments to be enforced in the ordinary way. But, when, by the law of this and other States, the whole jurisdiction to make such orders, and to enforce their execution, was conferred upon courts of record, where issues were framed and trials had much according to the course of the common law, there seems to be no good reason for not regarding such orders as judgments to be enforced by execution as in other cases ; especially as no additional hardship is imposed upon the respondent, but rather an amelioration of the stringent character of the former proceedings. Indeed, when, by our legislation the character of a judgment of a court of record is imparted to these proceedings, and when, by the former law the order for maintenance could be enforced both by commitment of the respondent and a levy upon his property, we may well infer the power to enforce such judgment by an execution against the estate, as well as the body, of the respondent. Such a conclusion can do no injustice to the respondent, and we are satisfied that there is nothing in the provisions of the statute in question, authorizing the commitment of the respondent, that limits the manner of enforcing such judgment to that particular method.

Elsewhere, under legislation substantially like our own, such orders are regarded as judgments and to be enforced by execution or action of debt upon them. *McLaughlin* v. *Whitten*, 32 Maine, 21 ; *Wallsworth* v. *Mead & Green*, 9 Johns. Rep. 367 ; *Dickinson* v. *Gray*, 2 Blackf. Indiana, Rep. 230. In *Cooper* v. *State*, 4 Blackf. 316, under a statute much like ours, it was laid down, that, where the order is made to pay from time to time, the persons entitled may have *scire facias* or debt for the same. See also *Woodkirk* v. *Williams*, 1 Blackford's Reports, 110 ; *Stanfield* v. *Fetters*, 7 Blackf. 558.

To the point, that the mode of enforcing the judgment is not limited to the commitment of the respondent, the case of *Rex* v. *Robinson*, 2 Burr. 799, before quoted, is an authority ; as is also *Chesley* v. *Smith*, 1 N. H. 22, where it was held, that assumpsit for tolls will lie, although, in the charter of the turnpike company, the power of stopping the traveller until he paid his toll was alone conferred ; and the same doctrine is applied in *Turnpike* v. *Coventry*, 10 Johns. 388, where a penalty was given by statute for cutting down a turnpike gate, and it was held that trespass would also lie as at common law. See also Com. Dig. Action upon Statute, C. ; and *Middleton* v. *Crofts*, 2 Atk. 675.

The judgment in this case is for $50.00 for expenses to the time of the judgment, and costs of prosecution, taxed at $46.67, together with fifty cents per week until the child is seven years old. It appears that the child is still living, and has always been taken care of by the plaintiff ; but as the child was born in May 1858, it has not yet attained the age of seven years.

The question then arises, whether these weekly instalments can be recovered in this form. In *Wallsworth* v. *Mead & Green*, 9 Johns. Rep. 367, it was held, they could be ; and so in *McLaughlin* v. *Whit-*

*ten*, 32 Maine, 21 ; and *Stanfield* v. *Fetters*, 7 Blackf. Indiana Rep. 558 ; see 7 U. S. Dig. 93, sec. 13.

It would seem, from these authorities, that debt upon a judgment or decree for money payable by instalments may be sustained, and we perceive no objection to it.   As the instalments are not all due yet, we will defer giving an opinion on this point until we have examined the declaration.

If it be urged, that it does not appear from the record that the child is still living, or that the weekly allowance is due, it may be answered that the judgment is *prima facie* evidence of the claim, and that it rests with the defendant to show himself exonerated from the payment of the allowance by showing the death of the child, the payment of the allowance, or other ground of defence.   This is the doctrine of *Wallsworth* v. *Mead & Green*, 9 Johns. 367 ; *Sweet* v. *Overseers of Clinton*, 3 Johns. Rep. 26 ; *Rockfeller* v. *Donnelly*, 8 Cow. 643.

The effect of the judgment, then, would be to entitle the plaintiff to recover the amount specified, without further showing, unless some valid defence was interposed by the defendant.

*Judgment for the plaintiff.*