James O. Shackelpord, J.,
delivered the opinion of the Court.
This is an action of debt, brought in the Circuit-Court of Williamson County, on a promissory note for $4,000, dated 26th December, 1861, due four months after date, executed by John McGavock and James Park, payable to the order of S. S. House, L. H. Moseley and J. W. Hall. The declaration is in the usual form; to which the defendant pleaded: First, the general issue, nil debit; second, that the said note was discounted by the officers .of the Planter’s Bank, at Franklin, to raise money to purchase horses and other equipments of a regiment to be mustered into the ser *36 vice of the so-called Confederate government; that said money was loaned by the officers of said bank for the illegal purpose of raising troops to war against the government of the United States, and is, therefore, void, etc.; that the note was transferred after maturity, to the plaintiff, with a full knowledge of purposes for which it was borrowed. Issue was taken on the pleas. The cause was submitted to a jury at the July Term, 1867, of the court, and, under the charge of the judge presiding, a verdict was rendered for the defendant in error. A new trial was moved for; and the motion was continued until the November Term, 1867, of said court, when the following entry was . made: “This day came the parties, by their attorneys, and on consideration of the motion heretofore made for a new trial of the issues in this cause, it is ordered by the Court that the said motion be overruled; to which the defendant or attorney, excepts, and tender their bill of exceptions, which is signed and sealed by the Court, and ordered to be made a part of the record in this cause.” This entry is made of the July Term, 1867, to-wit: “The 18th of July, 1867, judgment was rendered against the plaintiff in error, in pursuance of the verdict. The record has been filed for error.” Several questions have been elaborately argued, but in the view we have taken of the case, it is unnecessary for us to express any opinion upon them, except that arising upon the entry made at the November Term, 1867, upon overruling the motion for a new trial, and allowing the defendants to file their bill of exceptions. Did that become a part of the record in this cause, by the action of the Court *37 made a term subsequent to tbe finding of the verdict of the jury?
This question has been frequently before this Court, not in the precise form in which it is presented in this record; but we think, upon principle, it is embraced within the rule settled by the decisions of this Court, in the case of Terral vs. Alder, 2 Swan, 77. The Court say: “A bill of exceptions is for matter excepted to at the trial, and ascertained before the verdict. It is not requisite that it be formally signed before the trial is at an end. It is sufficient, if the exceptions be taken at the trial and noted by the Court, and it may, during the term, be reduced to form and signed by the judge.” This principle was settled by the Supreme Court of the United States, in 4 Peters, 106; in which the Court says: “It would be dangerous to allow a bill of exceptions of matters dependent on memory at a distant period, when the judge may not accurately recollect them, and they ought not to allow it.” If the party intend to take a bill of exceptions, he should give notice to the judge at the trial, and, if he does not file at the trial, he should move the judge to assign a reasonable time within which he may file it, but that time should be limited to the term at which the trial is had. This principle came before this Court- again in the case of Clark vs. Lavry, 3 Sneed 77. In that case, under an order of the Court, leave was granted to the party a certain specified time, within which to file a bill of exceptions after the rise of the Court, which was done, and it was held that it constituted no part of the record.
A bill of exceptions, to become a part of the record, *38 must be made up and signed by the judge, at the term in which the trial is had. A judge has no power to extend the time to a subsequent term. Though the motion for a new trial may be continued to a subsequent term, it does not carry with it the right to file a bill of exceptions at any other than the trial term.
We think this case falls within the principles settled by our adjudications. The entry made at the November Term, 1867, that the entry is made, “as of the July Term,” 1867, cannot have relation, so as to make it an entry mmo pro tuno. It cannot, therefore, avail the plaintiffs in error, as there is nothing in the record that would authorize the Court to enter it as of that term. This Court held, in a case reported in 11 Hump., p. 176, “when the records of the court are made up, corrected, approved and signed, for which purpose they were in the power of the Court only during the same term at which they are made, they are not only the most satisfactory and reliable evidence of the action of the court of its orders, verdicts and judgments, but they afford the only legal and proper evidence of its action.”
In the case of Crutchfield vs. Stewart, 1 Hum., 381, the judgment was corrected upon the written opinion filed among the papers; and in that case, upon a review of the authorities, the Court had hesitation in making the correction. The general rule is: a judgment or decree can only be amended, changed or altered by matter appearing in the record, or some matter in the nature of record. An order or decree made at a term cannot be entered at a subsequent term, unless there is some matter in the nature of a record, showing that *39 such, a judgment or entry was made, and by the omission of the clerk, it was neglected to be entered.
There is nothing in this record from which we can infer that this entry was made at the July Term, 1867, overruling the motion for a new trial and filing the bill of exceptions. It appears from the record, it was done at the November Term, 1867; and we must be governed in our conclusions, by the apparent statements of the record.
We must, therefore, hold: the motion for a new trial was overruled, and the bill of exceptions filed .at the November Term, 1867.
It is not necessary, under the rulings of this Court, in the case of Grubbs vs. Greer, 5 Cold., p. 160, that the minutes of the court should show the bill of exceptions was signed, sealed and made a part of the record. The statute provides the truth of the case being fairly stated in the bill of exceptions, the judge shall sign the same, which thereby becomes a part of the record. Motions for new trials are often made and continued from term to term. To permit parties to make up the bill of exceptions upon the overruling of the motion for a new trial at a subsequent term, after the facts have faded from the memory of the Court, would be the means by which great injustice would be done suitors. No judge can act advisedly upon a motion for a new trial, at a subsequent term, unless the evidence and charge upon which the verdict was rendered, is before him.
We think, to extend the rule and permit suitors to *40 make up the bill of exceptions, at a term subsequent to the trial, -would be a dangerous practice, and ought not to be allowed.
It results, therefore, the bill of exceptions filed in this cause, constitutes no part of the record, and cannot be looked to; and under the rulings of this Court, we are bound to presume the verdict and judgment rendered in the cause were regular, and must, therefore, be affirmed.
This cause was heard at a former day of the term, and the Court being of opinion from the facts presented in the record, the bill of exceptions purporting to harye been made and signed by the judge at a term-.subsequent to the trial, constituted no part of the record. The judgment of the Court below was affirmed. Afterwards, the plaintiffs in error, filed their petition for a rehearing; and the Court being satisfied from the facts presented, that it was necessary to the ends of justice, that a rehearing! of the case should be granted, it was allowed.
A diminution of the record was suggested, supported by affidavit, that the records of the court, would show at the trial term of the cause, a motion for a new trial was made and overruled, and at that term, the bill of exceptions was signed, sealed and made a part of the record; thereupon a certiorari was awarded; and upon the return thereof, we find the proper entries were made at the July Term, 1867, and that the bill of exceptions was properly filed at that term, it being the trial term of that court.
*41 It follows, therefore, the judgment entered in this cause will be set aside, and it will be heard upon the record as now presented.
The original note of which the one in suit is a renewal, was executed by John McGavock and James Park, as principals; and S. House, L. H. Mosely and Wm. W. Baugh, as indorsers, on the 26th of April, 1861, due at four months, and which was indorsed and delivered to the bank — they receiving the proceeds. At maturity the note was renewed, ($1,000,) having been paid at four months. It was regularly protested at maturity for want of payment and notice given, etc. It was transferred by the bank after due, to the defendant in error, as executor, and this suit was brought.
The declaration is in the usual form, to which the said McGavock, Parks and others, plead the general issue, and also a special plea that the note was discounted by the bank for an unlawful purpose, that is: “to arm and equip soldiers to war against the United States.”
The facts necessary to be stated to understand the principles involved, are substantially as follows: On the 26th of April, 1861, the first note was discounted by the branch of the Planters Bank at Franklin, for $4,000.00. . In August of the same year, it was renewed, and $1,000.00 paid upon it. The officers of the Branch Bank at Franklin, had received instructions to discount no note over $3,000.00. One of the directors came down to Nashville to see the directors of the principal bank, and get leave to discount this note. *42 He informed the officers of the bank, the object and purpose in procuring the discount was to raise money to equip Captain William Ewing’s company of cavalry, and Captain - company of infantry, for the purpose of entering service to war against the government of the United States. The matter was laid before the board at Nashville, and it was left to the discretion of the board at Franklin. Upon the return of the director, the note was discounted, and the money was expended for the purposes for which it was designed and intended to be raised. Upon the trial of the cause, His Honor charged the jury: First, — If the bank in the course of its ordinary business discounted the note, although knowing the -object of the proceeds to be to furnish and équip a military company for an unlawful purpose, M. C. H. Puryear could, nevertheless, collect the note. Second, — That if the original note, of which the one in controversy is a renewal, was for an illegal purpose, the point of illegality would attach to all renewals of the same; but that Park and others must, by proper allegations in their pleas, connect the note in controversy with the original, and that it cannot be connected by proof with the allegation of the plea. Third, — “That if Park and others, by the plea, stated the object of the money raised on the note, was to aid and assist the Confederate States in rebellion against the government óf the United States, that such allegation will not be sustained by proof, that it was to aid the State of Tennessee, or any other body of men in such an illegal *43 purpose, blit that the special character of the illegal transacaion cannot be shown under the general issue; it must be done by special pleas.”
A judgment was rendered for Puryear, A motion for a new trial was overruled, and the record is filed for error. We think that part of his honor’s charge in which he stated to the jury, if the note was discounted by the bank in the ordinary course of business, though the directors knew the proceeds were to be used for an unlawful purpose, Puryear could “recover,” is as an abstract proposition, correct; but taken in connection with the testimony in this cause, tended to mislead the jury. The mere fact that the directors of the bank knew the proceeds of the note were to be used for an illegal purpose, will not, of itself, ordinarily be sufficient to defeat the collection, but the bank must have been in some manner implicated in the transaction, and privy thereto. The test in such cases, is: whether the contract on which the claim is founded, can or not, be wholly, disconnected from the illegal transaction, or whether it was in furtherance of it: Story on Contracts, sec. 624; Armstrong vs. Toler, 11 Wheaton, 275; 3 Met., 207; Launton, 246; 3 Tenn. Rep., 418-
To guard against misapprehension of the principles upon, which the decision in this case is made, we state succinctly and definitely, — the mere knowledge of the bank of the illegal purpose to which Park and others, intended to apply the proceeds of the note, is not, of itself, enough to implicate the bank in the illegality of the transaction, and so affect the note with the taint of illegality. In order to so implicate the bank and affect the note, it must be shown that the bank *44 made the loan, with the purpose, on its part, to furnish money to enable the borrowers to do the illegal act.
We repeat, the mere knowledge of the lender of money, of the illegal use that the borrower intends to make of the money, is not enough, of itself, to fix the stain of illegality upon the lender. In order to do so, it must appear that the lender made the loan for the purpose to enable the borrower to do the illegal act.
If the original loan was for an illegal purpose, and falls within the rule stated, no subsequent renewal would remove the taint; and it can make no difference into whose hands it may have passed after due; and this fact could be given in evidence under the general issue in the .form of action.
We think his honor erred in the instruction in which he ruled that, under the plea of the general issue in this case evidence could not be given of the illegality of the contract. No principle is more clearly settled than that, under the general issue in an action of debt, any matter that shows the debt is not owing, or a discharge of it, may be given in evidence. Mr. Chitty, in his Avork on' Pleadings, vol. 1, page 481, says:, “The defendant may give in evidence, under this plea, every matter that shows nothing was owing, or any other matter in discharge of the debt.”
Such being the settled rules of law in pleadings of this character, it is unnecessary to comment further upon the charge of His Honor, in which we think he misapprehended the rules applicable to the admissibility of testimony under the pleas filed in this case.
The judgment must be reversed, and the case re *45 manded. The clerk of the court having failed to comply with the rules of this Court in making out a true transcript, will he allowed no costs.