CASE 6—MOTION—JUNE 26.

# Ex Parte Herrick.

APPEAL FROM JEFFERSON CIRCUIT COURT.

1. This Court has appellate jurisdiction of the rulings of the Circuit Court on witness claims of one dollar per day for attendance in behalf of the Commonwealth in a felony case in the city court of Louisville.
2. The claims of witnesses for attendance in felony cases upon summons in behalf of the Commonwealth are payable out of the Treasury.
3. Policemen of the city of Louisville are *not* entitled to pay for attendance as witnesses for the Commonwealth in the city court. They are prevented from doing so by an act approved March 1st, 1860, entitled "An act to provide a more efficient police department in the city of Louisville."

R. W. WOOLLEY AND S. CLEAVER FOR APPELLANT.

1. Witnesses in felony cases summoned by the State are paid out of the
   Treasury.   (Gen. Stat., sec. 1, art. 16, chap. 41; Ibid, sec. 6, art. 2,
   chap. 16; 1 Littell's Laws Ky., 472; Ibid, 470; 3 Litt. Laws Ky.,
   40; Constitution, sec. —, art. 4; Register v. Ried, 9 Bush, 103-6;
   Cosby's Con. Lim., 67, 71, 52; Sedgwick's Con. and Stat. Law, 251;
   Broaddus v. Broaddus, 10 Bush, 308; Gen. Stat., 615, 464; Ibid, 536;
   Ibid, 138; Ibid. 192; Rev. Stat., vol. 1, chap. 16.)

2. Policemen of the city of Louisville summoned as witnesses are paid
   as other witnesses.   (Crim. Code, sec. 437; Ibid, 440, 151; Civil
   Code, 536; Elliott's Dig., 123-5; Ibid, 323, 536; Lou. city charter,
   1870, sec. 126; Register v. Ried, 9 Bush, 103; Cosby's Con. Lim.,
   49, 50.)

THOS. E. MOSS, ATTORNEY GENERAL, FOR APPELLEE.

   No brief on file.

JUDGE HINES DELIVERED THE OPINION OF THE COURT.

   George E. Herrick, a policeman of the city of Louisville,
having attended in the city court one day as a witness on
behalf of the Commonwealth in a prosecution for felony,
presented to the Jefferson Circuit Court his certificate of
attendance, moved for an allowance and certification to the
Auditor for payment.   The motion was overruled, and an
appeal taken to this Court.

   The first question presented is, has this Court jurisdiction
of such an appeal?

   The first and second sections of article 22, chapter 28, of
the General Statutes provide that "the Court of Appeals
shall have appellate jurisdiction over the final orders and
judgments of all other courts unless otherwise provided, and
that no appeal shall be taken from a judgment for the re-
covery of money or personal property, if the value in con-
troversy be less than fifty dollars, exclusive of costs."

   No judgment for money or personal property being
sought, and there being no provision of the statute for-
bidding the appeal, it follows that it should be entertained.

Two other questions are presented:

*First.* Is there any provision in the statutes authorizing the allowance and payment out of the Treasury of the claims of witnesses for the Commonwealth in felony cases?

*Second.* If the law authorizes the payment of such claims in general, does the fact that the claim is for attendance as a witness in the city court, and that appellant was then a policeman, present any reason for its rejection?

An examination of the first point necessitates a reference to the legislation had prior to the adoption of the Revised and of the General Statutes.

December 17th, 1796, an act was approved, entitled "An act to reduce into one the several acts concerning the examination and trial of criminals, grand and petit juries, venires, and for other purposes," the 22d and 30th sections of which read as follows:

"The clerks of said superior courts shall, in a book by them kept for that purpose, enter the names of all venire men and witnesses who attend the trial of criminals at such courts, the number of days each shall attend, the number of ferries each shall have crossed, with the distances they shall have traveled on that occasion. A certificate of which from the said clerk shall entitle the person to whom it is given to a warrant from the Auditor for the amount, and to payment at the Treasury according to law."

"The several courts of quarter sessions within this Commonwealth, having jurisdiction in the examination of criminals, shall annually cause to be certified to the Auditor of Public Accounts, all claims for expenses accruing from the examination and trial of criminals, for the guard and maintenance of criminals in their counties, for charges properly chargeable to the public, together with the vouchers on

which such claims have been allowed; and the Auditor is,
hereby authorized and required to liquidate and adjust the·
said claims, and to grant warrants on the Treasury to the:
respective claimants for the amount of their claims." (1
Littell's Laws, pp. 470–472.) An act to establish circuit.
courts, approved December 20th, 1802 (volume 3, Littell's,
Laws, p. 40, sec. 7), made the sections above quoted appli--
cable to such courts, and on the adoption of the Constitu--
tion the circuit courts were continued in existence, with the.
powers and jurisdiction then belonging to, and exercised by,.
them. (Sec. 17, art. 4, of the Constitution.)

But it is insisted that the law authorizing the payment of
such claims was repealed by the Revised Statutes, which.
took effect July 1, 1852. Sub-section 5 of section 2 of the:
act adopting these statutes excepts from repeal "the statutes,
regulating proceedings in civil, criminal, and penal cases, not.
repealed by the Code of Practice or the Revised Statutes."
There is nothing in those statutes or in the Code that.
repeals the act of 1796, but, on the contrary, such claims,.
were allowed and paid, as was done previous to the adoption·
of the Statutes and Code. The allowance or rejection of
such claims being a matter of practice, we think comes
clearly within the exception mentioned. Sections 152 and.
403 of the old Criminal Code clearly recognize the validity·
of such claims.

It is further insisted that the General Statutes, which·
went into effect December, 1873, by necessary implication,.
repealed the act of 1796.

Section 1, article 16, chapter 41, of the General Statutes:
is as follows:

" A witness if summoned or *recognized* to attend shall.
be allowed for each day's attendance on court, or arbitrators,

or to give a deposition, or to give evidence *on any legal occa-sion*, $1.00." Section 6 requires the clerk to keep a book and enter the number of days' attendance of the witness, and mileage, and to deliver to each witness a copy of such claim showing the amount to which the witness is entitled.

Section 2 of the act adopting the General Statutes pro-vides "that all statutes of a general nature, in force when the General Statutes take effect, and which are repugnant thereto, are hereby repealed."

That portion of the act of 1796 which prescribes the manner in which such claims shall be paid does not appear to be repugnant to the sections quoted from the General Statutes, nor to any other portion of the Statutes. The General Statutes fix the amount to be allowed the witness for attendance, while the act of 1796 provides the manner of its payment. Nowhere in the General Statutes is there any attempt to prescribe a method by which such claims shall be paid. They contain no legislation what-ever upon the subject, and there cannot, therefore, be any conflict or repugnancy between the acts.

It is true that, ordinarily, when a subject is treated of in the General Statutes under a title, such as "Wills," &c., it is to be presumed that the General Statutes under that title contain all the statutory law upon the subject. Such is the construction, because that appears to have been the legislative intention; but when, in any case, the body of the Statutes shows that not to have been the intention, the construction indicated will not be applied. (Broaddus v. Broaddus, 10 Bush.) In this instance it ap-pears manifest that it was not intended, by the adoption of the General Statutes, to repeal that portion of the act of 1796 providing for the manner of payment of witnesses.

in Commonwealth cases.     Section 3 of chapter 68 is as follows:

"Witnesses attending the Legislature, or a committee thereof, shall be entitled to all the privileges and immunities and *the same compensation*, to be paid, when summoned by the Commonwealth, *out of the Public Treasury, as are allowed witnesses in other cases.*"

Section 4, article 6, chapter 15, title "Claims Upon the Treasury," reads:

"Judge advocates of any division or brigade court-martial . . . . shall be paid two dollars per day, . . . . and to each witness summoned on the part of the prosecution, the same compensation *as witnesses in other cases.* The above claims to be allowed by the Court and certified by the president before paid at the Treasury."

The following provisions of Bullitt's Code, the preparation of which was contemporaneous with the last revision of the statutes, clearly manifest the intention that such claims are to be paid out of the Treasury:

IN CASE OF IMPEACHMENT.—Section 437 reads: "Witnesses shall have the same compensation for travel and attendance, and the same exemptions in going, remaining, and returning, as witnesses in the Circuit Courts, and officers executing the process and orders of the Senate shall have like fees for their services."

Section 151 reads: "The provisions of the Code of Practice in civil actions shall apply to and govern the summoning and causing the attendance of witnesses, and compelling them to testify in all prosecutions, criminal or penal actions or proceedings, except that the attendance of witnesses residing in any part of the State may be coerced; and it shall never be necessary to tender to the witnesses

any compensation for expenses, or otherwise, before process· of contempt shall issue." (See section 536 of Civil Code.)

Construing the General Statutes and the Code together, as should be done, the conclusion appears irresistible that the intention of the Legislature is, that such claims should be paid out of the Treasury, and in the manner prescribed in the act of December 20, 1796.

Chapter 16 of the Revised Statutes, and chapter 15 of the General Statutes, title "Claims on the Treasury," are· the same. From the time of the adoption of the Revised Statutes up to the adoption of the General Statutes, and to the present time, the Circuit Courts have uniformly (except in this instance) recognized the right of the party to have his witness claim certified, and the duty of the Auditor to pay it. The continuance in force of that chapter amounts to a legislative adoption of the construction then placed upon it.

For seventy years or more such claims have been certified to and paid by the Auditor, and, in the interval, there have been two revisions of the Statutes and Code, with a period of thirty years intervening, without any express repeal of the act of December 20th, 1796; but, on the contrary, both in the Statutes and in the Codes, the act has been treated as if in force. After such contemporaneous and subsequent practical construction of the law, aided by the provisions of the Statutes and Codes recognizing the correctness of such construction, we are of the opinion that we ought not to say, in the absence of an express repeal or irreconcilable conflict between the act of 1796 and subsequent legislation, that the act of 1796, prescribing the manner of payment of such witness claims, is no longer in force. (Cooley on Constitutional

Limitations, 67; Sedgwick on Statutory and Constitu-
tional Law, 257; Commonwealth v. Cain, 14 Bush.)

We are of the opinion that such claims are payable
out of the Treasury.

Does the fact that appellant was a policeman, and
claimed for attendance in the City Court, interfere with
his right to have the claim certified?

Section 15 of an act approved March 1st, 1860, entitled
"An act to provide a more efficient police department in
the city of Louisville" (Elliott's Digest, page 123), reads:
"Members of the police force shall receive no pay for
attendance as witnesses in any suit or prosecution for vio-
lations of city ordinances, or in any penal or criminal case
in any court in said city." Subsequently, so much of
said section as forbid a policeman to claim for attendance
in the Circuit Court, was repealed.

Counsel contend that an act approved February 24th,
1868 (Elliott's Digest, pages 317–323), which provides for
the organization of the police force upon an entirely new
basis, repeals the whole of the act of March 1, 1860. It
is also insisted that the present charter of the city, which
reorganizes the police force, operates as a repeal of the
section quoted from the act of March 1, 1860. The 126th
section of the present charter is as follows: "All laws or
parts of laws having special application to the city of
Louisville, in so far as the same are in conflict with this
charter, are hereby repealed."

By reference to the act of 1868 and to the present charter,
it will be seen that there is no reference in either to the
matter covered by section 15 of the act of March 1st, 1860.
There is no express repeal of that section, and no conflict
between it and any portion of any subsequent act.

Ex Parte Herrick.

Counsel insist that an act, approved September 20th, 1861 (Elliott's Digest, pp. 123, 124), clearly repeals the 15th section of the act of March 1st, 1860. The act of 1861 reads:

"SEC. 1. So much of an act to charter the city of Louisville, approved March 24th, 1851, as requires or authorizes the election of watchmen by the qualified voters of said city, and prescribing their number and duties, and the term of office of watchmen, is hereby repealed.

"SEC. 2. All acts subsequent to said act, amendatory of the same, within the purview of the first section of this act, are hereby repealed."

This repealing clause does not reach the 15th section of the act of 1860, because the matters contained in that section do not come within the purview of the first section of the act of September, 1861. The deprivation of the right to claim for attendance as a witness in the City Court is not one of the "duties" of a watchman or policeman which was intended to be affected by the act last referred to.

Judgment affirmed.

JUDGE HINES DELIVERED THE RESPONSE TO PETITION FOR REHEARING.

When the first and second sections of the act of September 20th, 1861 (Elliott's Digest, pp. 123, 124), are considered together, it is clearly manifest that the legislative intention was to repeal only so much of the charter of 1851, and of the amendatory act of February 29th, 1860 (March 1st, 1860, in Elliott's Digest), "as requires or authorizes the election of watchmen by the qualified voters of said city, and prescribing their number and duties, and the tenure of office of watchmen." That it was not the intention to repeal the 15th section of the act of 1860, forbidding policemen to claim as witnesses for the Commonwealth; and that

it was not understood by the Legislature that the act of September, 1861, did repeal it, is further made manifest by an act of February 13th, 1863 (Elliott's Digest, p. 125), which repeals so much of said section only as forbids policemen to claim for attendance in the Circuit Court.  The act of 1863 is an express legislative recognition of the vitality of the 15th section of the act of March 1st, 1860.

It is insisted that the word "tenure," used in the first section of the act of 1861, enlarges the scope of the repealing clause of that act beyond the meaning of the word "term" inadvertently used in the opinion.  The word tenure in this connection means nothing more than the right to, or the manner of holding, the place of policeman.  The deprivation of the right to claim attendance as a witness in certain cases has no connection with, or reference to, the tenure of office. It is not affected by the manner of appointment or the term of service.

The title of the act, "to provide a more efficient police department," is broad enough to embrace the fifteenth section, and is not in conflict with article 2, section 37, of the Constitution.

The case of Speed & Worthington v. Crawford (3 Met., 209) does not decide the whole of the act of 1860 unconstitutional.  The opinion in that case expressly holds that act to be unconstitutional in the following particulars only:

1st. In providing for the *appointment*, by the Chancellor or Governor, of the two members of the police board, instead of requiring them to be *elected*.

2d. In not prescribing the *term* for which those officers. were to be elected.

3d. In conferring upon them powers which are essentially executive, and other powers which are essentially judicial.

The fact that the 15th section of the act of 1860 has been ignored by all departments of the State government since the passage of the act of 1863, cannot alter the Constitution. Practical and contemporaneous construction can only be relied upon as a guide when the language of the law is ambiguous. It can in no case make or repeal a law. When the intention of the law-makers is clearly manifest in the law itself, as in this instance, non-user cannot invalidate a law, nor time sanctify an inoperative or unconstitutional enactment.

Petition for rehearing overruled.