HARVEY P. WASSERBOEHR *vs.* WILLIAM T. MORGAN.

Suffolk.   January 21, 1897. — May 19, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, & KNOWLTON, JJ.

*Intoxicating Liquors — Illegal Sale — Evidence — Action — Finding — Inference.*

In an action for the price of intoxicating liquors sold here and sent to a dealer in liquors in another State, the statutes of that State, prohibiting the sale of such liquors there by any person not an agent of a town for that purpose, are properly admitted in evidence; and evidence that the buyer had never been such an agent is also admissible.

If a wholesale dealer in intoxicating liquors in this Commonwealth is accustomed to sell liquors to retail dealers in another State, the statutes of which prohibit the sale of such liquors except by town agents, in an action by him for the price of liquors sold, through an agent residing in that State, to a person entering into the liquor business there, it is competent for the judge, sitting without a jury, to find that both the plaintiff and his agent knew of the prohibitory law of the other State and that the defendant was not a town agent; and to infer that the plaintiff knew that the defendant intended to sell the liquors illegally, and that the plaintiff sold the liquors with a view to such resale by the defendant.

CONTRACT, upon an account annexed, for intoxicating liquors sold in February and March, 1893. The answer contained a general denial, and also alleged that the sale was illegal. Trial in the Superior Court, without a jury, before *Bond, J.*, who allowed a bill of exceptions, in substance as follows.

Edward Schwab, called by the plaintiff as a witness, testified that he had been employed by the plaintiff as a bookkeeper during the last ten or twelve years in Boston, and knew the defendant by having met him at the place of business of the plaintiff; that the goods described in the account on which this action was brought were shipped from the plaintiff's place of business by his directions, and he made the entries on the plaintiff's books for the various items; that the goods were delivered to an express, and directed to the defendant, who resided in Manchester, New Hampshire; that he afterwards saw the defendant in the early part of January, 1894, at the office of the plaintiff in Boston; that he had a talk with him about the bill; that the defendant said that he came here to pacify the plaintiff, to tell

him not to be afraid about the bill, that he would surely pay it; and that they never sold any other goods besides that bill to the defendant.

On cross-examination, the witness testified that the defendant's name appeared upon the books of the plaintiff as residing in Manchester, New Hampshire; that he never saw the defendant before his order was taken; that it was taken by the plaintiff's selling agent, one Boire, in Manchester, where he lived, and sent by mail for the plaintiff's approval; that after the order had been approved by the plaintiff, the witness made out the tags, and shipped the goods by an express which runs to Manchester; that he knew that the defendant was supposed to live in Manchester; that he had a conversation with the defendant at the plaintiff's office; that he said business had been bad with him up there; that the witness was not aware that he spoke of the authorities interfering with his selling and shutting him up; that he did not know that he was in the liquor business, except by his admission in the plaintiff's office when he first saw him; that he did not know that he was in the liquor business when they first got his order, that he only suspected it; and that the freight on this bill was not paid by the plaintiff, but must have been paid by the defendant.

The plaintiff testified that he never knew the defendant until he saw him in court at the day of the trial, where he was pointed out; that he first knew of him when he received a letter from his salesman, Boire; that he was informed that the defendant wished to buy some liquors, that being the plaintiff's business; that no one had authority to sell goods without his approval, and all orders were subject to his approval; that he did finally approve the order, and gave directions to his bookkeeper about shipping the goods; that he told his bookkeeper to have the order filled as it now stands on the books, and see that it was shipped; that only $120 of the bill had been paid, and that was paid by the defendant's check; that he had never sold any goods to the defendant before this bill, and none since; and that no bill was ever presented to him for payment of the freight.

On cross-examination, the plaintiff testified that Boire was his selling agent, and had been for a number of years; that Manchester was his home, as he understood it; that he did not know

whether he had twenty or twenty-five customers in Manchester, or not; that he sold some goods in Manchester through Boire at the time; that he would not give the salesman positive authority to sell goods to whom he pleased; that he looked up the defendant's credit in a measure, and finally decided to sell him the goods; that he relied on what Boire told him by letter; that he told him enough so that he trusted the defendant for over $500; that he did not then know that the defendant was in the liquor business; and that that letter said that the defendant was going into business, and that he was fitting up a place to go into business at Manchester.

The defendant was called by the plaintiff, and testified that he received the goods from Boston named in the bill; and that he had only paid $120, and that by check, on the bill.

On cross-examination, he testified that he bought the goods of Boire at Manchester; that he was then fixing up a place to go into the liquor business; that he had conversation with Boire about it; that he told him what he was going to do; that he told him that he was going to fix up there and sell liquor, and that he sold him these goods; that it was after that that he sold him these goods; that he (Boire) saw the place he was fixing up; that he was down there; that when the goods came, he thought that they were addressed to 58 West Summer Street; that that is the same place that he was fixing up to go into business; and that these goods were used in that place of business.

The defendant offered in evidence the Public Statutes of New Hampshire of 1891, c. 112, §§ 15–21.

The plaintiff objected to the introduction of this statute, both for want of proof and on the ground that the sale was in Massachusetts. The judge admitted the statute; and the plaintiff excepted.

The defendant was recalled by his counsel, and asked this question: " Were you, at the time that you bought these goods, or at any time have you ever been, town agent of a town or city of New Hampshire? "

The question was objected to, and admitted; and the plaintiff excepted. The defendant answered, " No, sir; I was not."

The plaintiff asked the judge to rule that, on all the evidence in the case, the defendant had not made out a legal defence to the

action; and that the finding should be for the plaintiff for the full amount of the claim. The judge refused so to rule, and found for the defendant; and the plaintiff alleged exceptions.

*E. G. McInnes,* (*C. S. Lincoln* with him,) for the plaintiff.

*W. R. Sears,* for the defendant.

FIELD, C. J. This action was tried by the court without a jury, and the finding was for the defendant. The view most favorable for the plaintiff is, that the evidence showed that the sale of the liquors was made, not in New Hampshire, but in Massachusetts, to the defendant, who lived in New Hampshire, with the knowledge or belief on the part of the plaintiff that the defendant intended to sell the liquors at his place of business in Manchester, New Hampshire. The plaintiff contends that there was no evidence on which the court could properly find that the plaintiff knew that the laws of New Hampshire prohibited the sale of intoxicating liquors, and that the defendant intended to sell the liquors at Manchester in violation of these laws, and no evidence that the plaintiff made the sale with the view or intention that the defendant should so resell them.

The defendant offered in evidence the Public Statutes of the State of New Hampshire of the year 1891, c. 112, §§ 15–21. They purport to have been enacted by the Senate and House of Representatives of the State of New Hampshire in General Court convened, and to have been approved by the Governor on April 11, 1891; and it is provided therein that they shall take effect on the first day of January·then next ensuing. These statutes prohibit and make criminal the selling or keeping for sale of any spirituous liquors, or of lager beer or other malt liquors, by any person not an agent of a town for the purpose of selling spirituous liquors. The statutes were rightly admitted in evidence, as was the testimony that the defendant never had been a town agent in New Hampshire. Pub. Sts. c. 169, § 71. One objection made at the argument in this court to the admission of the statutes in evidence is that they were not properly pleaded in the answer of the defendant, but the objection at the trial was not put on this ground.

The declaration is on an account annexed for liquors sold at different times, from February 1, 1893, to March 15, 1893. The order for the liquors was taken by one Boire, the plaintiff's sell-

ing agent, who lived in Manchester, and the plaintiff testified that "he sold some goods in Manchester through Boire at the time"; that "he did not know whether he had twenty or twenty-five customers in Manchester, or not." The defendant testified, among other things, as follows: "that he bought the goods of Boire at Manchester; that he was then fixing up a place to go into the liquor business; that he had conversation with Boire about it; that he told him what he was going to do; that he told him that he was going to fix up there and sell liquor, and that he sold him these goods; that it was after that that he sold him these goods; that he (Boire) saw the place he was fixing up; that he was down there; that when the goods came, he thought that they were addressed to 58 West Summer Street; that that is the same place that he was fixing up to go into business; and that these goods were used in that place of business."

It is not a violent inference of fact from the evidence that a wholesale liquor dealer in Boston, Massachusetts, accustomed as the plaintiff was to selling intoxicating liquors to retail dealers in New Hampshire, knew whether that State by its statutes prohibited the sale of such liquors except by town agents, or licensed the sale, or had no statutes on the subject; and it is a still less violent inference of fact that Boire, who lived in Manchester, New Hampshire, and was the selling agent of the plaintiff, knew what the statutory law of New Hampshire was on the subject, and the knowledge of the agent is the knowledge of the principal. *Suit* v. *Woodhall*, 113 Mass. 391. We think that it was competent for the court trying the case without a jury to find on the evidence that both the plaintiff and Boire knew that the statutes of New Hampshire prohibited the sale of intoxicating or spirituous liquors except by town agents, and that the defendant was not a town agent. The further inference that the plaintiff knew that the defendant intended to sell the liquors in violation of the statutes of New Hampshire, and that the plaintiff sold the liquors to the defendant with a view to such resale, is one that the court properly could make. If the liquors had been imported liquors, sold in the original package, we think that there would have been some evidence of it, and there was no such evidence. See *Graves* v. *Johnson*, 156 Mass. 211.

*Exceptions overruled.*