## JAMES M. ADAMS *vs.* HENRY COULLIARD.

Upon the repeal of the Gen. Sts. c. 86, § 61, by the St. of 1868, c. 141, a seller of intoxicating liquors in another state might maintain here an action for their price, if the sale was lawful where it was made, although the liquors were bought for the purpose of being brought into this Commonwealth to be here kept or sold in violation of law, and the seller had reasonable cause to believe that the buyer entertained such an unlawful purpose.

At common law, mere reasonable cause of belief, without actual knowledge, on the part of the seller of goods, that the purchaser buys for the purpose of carrying them into another state, to be there kept or resold in violation of law, does not invalidate the sale.

In an action for the price of goods which the plaintiff contended that he delivered to a carrier for transportation to the defendant at another place, and the defendant denied that he received, *Held,* 1. that it was competent for the plaintiff to prove by the freight books and freight agents of a railroad between the two places, that the goods passed over it consigned to the defendant's place; 2. that the testimony of the bookkeeper, (whose method of keeping his freight receipt book was by entering thereon the waybills after they had been checked by some person who received the freight,) that, although he had no present recollection of certain entries in his handwriting on that book and on the freight cash book, yet he had no doubt that they were correct and that the transactions therein recorded took place, afforded no ground of exception; and 3. that the rule, which excludes the use, as evidence, of written instruments which contain material and unexplained alterations, did not apply to exclude these entries.

At a trial in which single entries on an account-book were properly read to the jury by one party, the other party has no ground of exception because the book itself was not submitted to the inspection of the jury, if he made no request that it should be put into the case; though he specially objected to the admission of one of the entries on the ground that it showed an alteration.

CONTRACT for the price of intoxicating liquors sold by the plaintiff to the defendant. Writ dated May 25, 1868.

At the trial in the superior court, before *Brigham,* J., there was evidence that the plaintiff was a liquor dealer in the city of New York; that in April 1866, his clerk, William D. Adams, procured from the defendant, at Shelburne Falls in this Commonwealth, an order for the liquors, and communicated it to the plaintiff; and that the price of the liquors was agreed upon at the time of procuring the order.

The question was disputed whether or not it was agreed between the clerk and the defendant that the plaintiff should deliver the liquors at Shelburne Falls ; and the defendant testified that it was so agreed. In behalf of the plaintiff, (after the introduction of certain depositions, including his own and the clerk's, tending to prove a contract of sale of the liquors, completed in

New York by the delivery of the four kegs containing them marked ◇Ⓒ, to a common carrier in that city, on April 23, 1866,) Hoyt E. Howard, the freight agent at Greenfield of the Connecticut River Railroad, Lazarus C. Pratt, formerly a book-keeper in the Greenfield freight depot, and John Smith were called as witnesses, and Howard identified certain books, including a freight receipt book and a cash book, as "the regular freight business books of said road," Pratt testified that he kept these books in April 1866, and entered the way bills into the freight receipt book after they were checked by some person who received and checked off the freight, and Smith testified that "at the time in question" he was employed in said depot, and was in the habit of checking off freight upon the way bills and handing to Pratt the bills as checked.

Pratt further testified to the following entry on the freight receipt book as being in his handwriting; and that he did not recollect the transaction.

| MONTH OF APRIL 1866. RECORD OF FREIGHT REC'D AT GREENFIELD STATION. | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Way Bill. | No. of Car. | Where from. | Con-signed. | Destina-tion. | Description of goods. | Weight. | Freight. | Expenses. |
| Date. | Recd. | | | | | | | | |
| 26 | 26 | 48 | Spfd. | ◇Ⓒ | | 4 kegs liquor. | 230 | 1.01 | .75 |

He also identified the following entry on the freight cash book as in his handwriting; and testified that "the figures 26 indicated the date when the goods were received, for the payment of freight on which this entry stood."

| Dr. | Cash. | Dr. |
|---|---|---|
| April | | $ | c. |
| ~~May~~ 2 ◇Ⓒ | *S.* 26 | 1 | 76 |

"The preceding page of the cash book bore date April 30 following entries during the month of April in their regular

order; and the succeeding page bore date May 2, altered to April, as in the entry testified by the witness. The book closed on the second page following; and on the last page were five entries of April 30, and two entries of May 12.

"Pratt was then asked by the plaintiff, 'Have you any doubt that these entries are correct, and that the transaction therein recorded took place?' This question was objected to, but allowed by the judge; and the witness testified that he had no doubt. The plaintiff thereupon offered the said books and entries, and, against the defendant's objection, was allowed by the judge to read the entries, and these only, to the jury in evidence. The defendant did not ask that the book should be put into the case if the entry was admitted. To the admission of the entry from the cash book the defendant specially objected, that it showed an alteration, and that the entry as altered was immaterial; which objection was overruled.

"The defendant testified that he never received the liquors; but there was further evidence on the part of the plaintiff tending to show that the packages indicated by the entries had been delivered to the defendant at Shelburne Falls, and that he had paid to a teamster the freight thereon, as an item in a monthly bill for teaming from Greenfield to Shelburne Falls.

"At the conclusion of the trial the judge presented to the jury, with instructions not objected to, four questions, on each of which the evidence was conflicting, and directed them to find an answer to each question, and return into court for instructions. These questions and their answers were as follows: 1. 'Was the merchandise, for which the plaintiff sues to recover the price, in this action, delivered to the defendant?' Answer, 'Yes.' 2. 'Was the contract of sale, between the plaintiff and the defendant, made in Massachusetts or in New York?' Answer, 'New York.' 3. 'Did the plaintiff know that the defendant made the contract of sale, intending to sell the liquors in violation of the laws of Massachusetts?' Answer, 'No.' 4. 'Did the plaintiff, under the circumstances attending the contract of sale, have reasonable cause to believe that the liquors, sold by him to the defendant, were to be brought into Massachusetts for the purpose of being sold here in violation of law?' Answer, 'Yes'

" On the return of the jury with their findings on the questions, the presiding judge ruled that the facts found by the jury did not constitute a defence to this action, and directed a verdict for the plaintiff, which the jury returned." The defendant alleged exceptions.

*W. S. B. Hopkins,* for the defendant. 1. The fourth special finding of the jury entitled the defendant to a verdict. The Gen. Sts. *c.* 86, were in force when the liquors were bought and delivered, if they were delivered at all. The repeal of that chapter before this action was brought cannot affect the application of § 61 to suits for the recovery of the price of liquors sold before the repeal. The act contemplated in that section was the participation in a crime against the law of this state; which character must always attach to it. The cases where the repeal of a restrictive statute has been held to remit a person, barred of his recovery by the statute, to his common law remedy, have been those where the contract involved no participation in a crime. Both the letter and the spirit of § 61 declare the illegality of and consequent want of consideration for the contract. If a legal consideration be wanting to a contract when made, the repeal of a statute cannot thereafter supply it.

2. The entries in the books of the railroad corporation were wrongly admitted. A cash book was not such a book as was evidence of any transaction which could properly be inquired into in the case. The entry admitted from it was irrelevant, because bearing date twenty-one days before the goods were delivered to the carrier in New York, if they were ever delivered. And the evident irregularities in the book, such as erasures and confusion of dates, were such as to make the entries therein inadmissible. *Cogswell* v. *Dolliver,* 2 Mass. 217. *Harwood* v. *Mulry,* 8 Gray, 250. *Davis* v. *Sanford,* 9 Allen, 216. *Gale* v *Norris,* 2 McLean, 469.

If admitted at all, the books should have gone to the jury to enable them to judge of their accuracy and credit as evidence. It was not necessary for the defendant to ask that the books be submitted to the jury, after attention had been called to the irregularities and a ruling thereon specially asked. The case is

distinguishable from *Briggs* v. *Rafferty*, 14 Gray, 525, in the purpose for which the books were offered, and the party offering the evidence; and perhaps in the kind of books offered. *Derby* v. *Salem*, 30 Verm. 722. *New England Manufacturing Co.* v. *Vandyke*, 1 Stockton, 498.

The question put to Pratt, about his opinion of the actual occurrence of the transactions recorded in the entries on the books, was improper. It called for an expression of opinion on matters on which his knowledge must have been hearsay. He not only had no recollection of the transaction of receiving the freight, but was not even the person to have received it. His opinion of the business accuracy and personal honesty of Smith, the checking clerk, cannot be admitted to fortify the books as evidence.

All this evidence, if it was competent as going to show arrival of the goods at Greenfield, was material, even in view of the second finding of the jury, as it was corroborative of the testimony of delivery to a carrier in New York. *Non constat* that without it the jury would have been satisfied of delivery there on the evidence in the depositions, controlled by the defendant's oath that he never received the goods.

*G. W. Bartlett*, for the plaintiff.

COLT, J. The verdict of the jury, in this case, establishes the facts, that the liquors, the price of which the plaintiff seeks to recover, were sold to the defendant in New York; and that the plaintiff had reasonable cause to believe, but had no knowledge, that they were to be brought into this state for the purpose of being sold here in violation of law.

The action was commenced May 25, 1868. Under the Gen. Sts. *c.* 86, § 61, it could not have been maintained. The statute affects the remedy and was repealed by the St. of 1868, *c.* 141, before this suit was commenced. The cause of action still remained, and it arose out of a contract valid by the laws of the place where it was made. It is claimed, on the part of the defendant, that the contract originated in the purpose to violate a known law of this state; and that our courts will not lend their aid, and afford a remedy thereon, even after the repeal of

such law. To do this, it is said, would violate an elementary principle of the common law. The illegality of the contract must be determined by the law as it existed at the time the contract was entered into. If then illegal at the place where the contract is sought to be enforced, the rule applies.

It is not necessary, here, to consider whether the general rule has any modifications, when applied to contracts made out of the state, or to contracts made solely with reference to a violation of the revenue laws. In order to make the plaintiff, under any circumstances, a participant in such unlawful sale, at common law, it is necessary that he should at least have knowledge of the unlawful purpose. In some early cases, it was held that mere knowledge of the unlawful purpose of the buyer, on the part of the seller, without further act, where the illegal use to be made of the goods was no inducement in the mind of the seller, would not vitiate the sale, so as to deprive the seller of his remedy. Clearly it is not enough, if he has only reasonable cause to believe that a violation of law is intended. The statute a one introduces this element, and upon its repeal the rule at common law only applies.

It was held in *McIntyre* v. *Parks*, 3 Met. 207, that a sale of lottery tickets, made in another state where such sale is lawful, to a citizen of this state, is a lawful transaction, although the seller knows that the purchaser buys for the purpose of illegal sale here. And the seller may maintain an action upon securities assigned to him in payment. In *Webster* v. *Munger*, 8 Gray, 587, the plaintiff sued to recover the price of intoxicating liquors. Both plaintiff and defendant were citizens of this Commonwealth, but the sale was made in another state, and the defence was, that they were sold in violation of the St. of 1852, *c.* 322. The validity of the sale was determined at common law; and the jury were instructed, in substance, that, if the sale was made on the part of the plaintiff "with a view" to a resale contrary to the laws of this Commonwealth, the action could not be maintained. This instruction was approved, and Thomas, J., who delivered the opinion, says of the rule in *McIntyre* v. *Parks*, that, if rightly laid down, it is not to be extended, but that the distinction is sound between a case where a seller simply has

knowledge of the illegal design, — no more, — and where he makes a sale with a view to such design, and for the purpose of enabling the purchaser to effect it.

The later decisions in England establish the rule, that the sale of a thing, in itself a proper article of commerce, is void, when the vendor sells it knowing that it is intended to be used for an immoral or illegal purpose. *Cannan* v. *Bryce*, 3 B. & Ald. 179. *Pearce* v. *Brooks*, Law Rep. 1 Ex. 213. Benjamin on Sales, 383. See also *Sortwell* v. *Hughes*, 1 Curtis C. C. 244 *Territt* v. *Bartlett*, 21 Verm. 184; *Dater* v. *Earl*, 3 Gray, 482. But no case can be found where anything short of actual knowledge, on the part of the seller, of the illegal purpose, has been held to affect his rights under a contract of sale. In the case at bar, the jury have negatived such knowledge in the plaintiff.

For the purpose of establishing a delivery of the goods in New York, the receipt of which the defendant denied, it was clearly competent for the plaintiff to trace them by evidence from the freight books and the testimony of freight agents upon the line of transportation. Inferences of fact are always to be legitimately drawn from the known course of business. And although the plaintiff claimed that the delivery was in New York, and that it was immaterial to his right of action whether they were ever received, yet the fact that they passed in due course on their way to the defendant had a tendency to confirm the alleged delivery. *Briggs* v. *Rafferty*, 14 Gray, 525.

The books were used as memoranda from which the witness Pratt testified; and, although he had no present recollection of the transaction, he was rightly permitted to state that he had no doubt the entries in his handwriting were correct, and that the transaction took place as there entered. The entries were then properly read to the jury; and the defendant, not then asking to have them put into the case, cannot now object that they did not go to the jury.

The rule which excludes the use, as evidence, of written instruments which contain material and unexplained alterations, does not apply to memoranda and entries of the description here read to the jury. *Exceptions overruled.*