CHESTER H. GRAVES & others *vs.* WALTER B. JOHNSON.

Suffolk.   January 26, 1892. — May 6, 1892.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Intoxicating Liquors — Resale in another State.*

A sale of intoxicating liquors in this Commonwealth, with knowledge of the seller that they were to be resold by the purchaser in another State contrary to its laws, and with a view to such resale, will not support an action for the price in this Commonwealth.

HOLMES, J.   This is an action for the price of intoxicating liquors. It is found that they were sold and delivered in Massachusetts by the plaintiffs to the defendant, a Maine hotel keeper, with a view to their being resold by the defendant in Maine, against the laws of that State. These are all the material facts reported; and these findings we must assume to have been warranted, as the evidence is not reported, so that no question of the power of Maine to prohibit the sales is open. The only question is whether the facts as stated show a bar to this action.

The question is to be decided on principles which we presume

would prevail generally in the administration of the common law in this country. Not only should it be decided in the same way in which we should expect a Maine court to decide upon a Maine contract presenting a similar question, but it should be decided as we think that a Maine court ought to decide this very case if the action were brought there. It is noticeable, and it has been observed by Sir F. Pollock, that some of the English cases ·which have gone farthest in asserting the right to disregard the revenue laws of a country other than that where the contract is made and is to be performed, have had reference to the English revenue laws. *Holman* v. *Johnson*, 1 Cowp. 341. Pollock, Con. (5th ed.) 308. See also *M'Intyre* v. *Parks*, 3 Met. 207.

The assertion of that right, however, no doubt was in the interest of English commerce, (*Pellecat* v. *Angell*, 2 Cr., M. & R. 311, 313,) and has not escaped criticism, (Story, Confl. Laws, §§ 257, 254, note, 3 Kent Com. 265, 266, and Wharton, Confl. Laws, § 484,) although there may be a question how far the actual decisions go beyond what would have been held in the case of an English contract affecting only English laws. See *Hodgson* v. *Temple*, 5 Taunt. 181; *Brown* v. *Duncan*, 10 B. & C. 93, 98, 99; *Harris* v. *Runnels*, 12 How. 79, 83, 84. ·

Of course it would be possible for an independent state to enforce all contracts made and to be performed within its territory, without regard to how much they might contravene the policy of its neighbors' laws. But in fact no state pursues such a course of barbarous isolation. As a general proposition, it is admitted that an agreement to break the laws of a foreign country would be invalid. Pollock, Con. (5th ed.) 308. The courts are agreed on the invalidity of a sale when the contract contemplates a design on the part of the purchaser to resell contrary to the laws of a neighboring state, and requires an act on the part of the seller in furtherance of the scheme. *Waymell* v. *Reed*, 5 T. R. 599. *Gaylord* v. *Soragen*, 32 Vt. 110. *Fisher* v. *Lord*, 63 N. H. 514. *Hull* v. *Ruggles*, 56 N. Y. 424, 429.

On the other hand, plainly, it would not be enough to prevent a recovery of the price that the seller had reason to believe that the buyer intended to resell the goods in violation of law; he must have known the intention in fact. *Finch* v. *Mansfield*, 97 Mass. 89, 92. *Adams* v. *Coulliard*, 102 Mass. 167, 173. As in the case

of torts, a man has a right to expect lawful conduct from others. In order to charge him with the consequences of the act of an intervening wrongdoer, you must show that he actually contemplated the act. *Hayes* v. *Hyde Park*, 153 Mass. 514, 515, 516.

Between these two extremes a line is to be drawn. But as the point where it should fall is to be determined by the intimacy of the connection between the bargain and the breach of the law in the particular case, the bargain having no general and necessary tendency to induce such a breach, it is not surprising that courts should have drawn the line in slightly different places. It has been thought not enough to invalidate a sale, that the seller merely knows that the buyer intends to resell, in violation even of the domestic law. *Tracy* v. *Talmage*, 4 Kernan, 162. *Hodgson* v. *Temple*, 5 Taunt. 181. So, of the law of another State. *M'Intyre* v. *Parks*, 3 Met. 207. *Sortwell* v. *Hughes*, 1 Curt. C. C. 244. *Green* v. *Collins*, 3 Cliff. 494. *Hill* v. *Spear*, 50 N. H. 253. (*Dater* v. *Earl*, 3 Gray, 482, is a decision on New York law.)

But there are strong intimations in the later Massachusetts cases that the law on the last point is the other way. *Finch* v. *Mansfield*, 97 Mass. 89, 92. *Suit* v. *Woodhall*, 113 Mass. 391, 395. And the English decisions have gone great lengths in the case of knowledge of intent to break the domestic law. *Pearce* v. *Brooks*, L. R. 1 Ex. 213. *Taylor* v. *Chester*, L. R. 4 Q. B. 309, 311.

However this may be, it is decided that when a sale of intoxicating liquor in another State has just so much greater proximity to a breach of the Massachusetts law as is implied in the statement that it was made with a view to such a breach, it is void. *Webster* v. *Munger*, 8 Gray, 584. *Orcutt* v. *Nelson*, 1 Gray, 536, 541. *Hubbell* v. *Flint*, 13 Gray, 277, 279. *Adams* v. *Coulliard*, 102 Mass. 167, 172, 173. Even in *Green* v. *Collins* and *Hill* v. *Spear*, the decision in *Webster* v. *Munger* seems to be approved. See also *Langton* v. *Hughes*, 1 M. & S. 593. *M'Kinnell* v. *Robinson*, 3 M. & W. 434, 441. *White* v. *Buss*, 3 Cush. 448. If the sale would not have been made but for the seller's desire to induce an unlawful sale in Maine, it would be an unlawful sale on the principles explained in *Hayes* v. *Hyde Park*, 153 Mass. 514, and *Tasker* v. *Stanley*, 153 Mass. 148. The overt act

of selling, which otherwise would be too remote from the appre-hended result, an unlawful sale by some one else, would be con-nected with it, and taken out of the protection of the law by the fact that that result was actually intended. We do not under-stand the judge to have gone so far as we have just supposed. We assume that the sale would have taken place, whatever the buyer had been expected to do with the goods. But we un-derstand the judge to have found that the seller expected and desired the buyer to sell unlawfully in Maine, and intended to facilitate his doing so, and that he was known by the buyer to have that intent. The question is whether the sale is saved by the fact that the intent mentioned was not the controlling in-ducement to it. As the connection between the act in question, the sale here, and the illegal result, the sale in Maine — the ten-dency of the act to produce the result — is only through the later action of another man, the degree of connection or tendency may vary by delicate shades. If the buyer knows that the sale is made only for the purpose of facilitating his illegal conduct, the connection is at the strongest. If the sale is made with the desire to help him to his end, although primarily made for money, the seller cannot complain if the illegal consequence is attributed to him. If the buyer knows that the seller, while aware of his intent, is indifferent to it, or disapproves of it, it may be doubtful whether the connection is sufficient. Compare *Commonwealth* v. *Churchill*, 136 Mass. 148, 150. It appears to us not unreasonable to draw the line as it was drawn in *Webster* v. *Munger*, and to say that, when the illegal intent of the buyer is not only known to the seller, but encouraged by the sale as just explained, the sale is void. The accomplice is none the less an accomplice because he is paid for his act. See *Common-wealth* v. *Harrington*, 3 Pick. 26.

The ground of the decision in *Webster* v. *Munger* is, that con-tracts like the present are void. If the contract had been valid, it would have been enforced. *Dater* v. *Earl*, 3 Gray, 482. *M'Intyre* v. *Parks*, 3 Met. 207. As we have said or implied already, no distinction can be admitted based on the fact that the law to be violated in that case was the *lex fori*. For if such a distinction is ever sound, and again if the same prin-ciples are not always to be applied, whether the law to be

violated is that of the State of the contract or of another State, (see *Tracy* v. *Talmage*, 4 Kernan, 162, 213,) at least the right to contract with a view to a breach of the laws of another State of this Union ought not to be recognized as against a statute passed to carry out fundamental beliefs about right and wrong, shared by a large part of our own citizens. *Territt* v. *Bartlett*, 21 Vt. 184, 188, 189. In the opinion of a majority of the court, this case is governed by *Webster* v. *Munger*, and we believe that it would have been decided as we decide it, if the action had been brought in Maine instead of here. *Banchor* v. *Mansel*, 47 Maine, 58.

*Exceptions sustained.*

*A. J. Pratt*, for the plaintiffs.

*C. C. Powers*, for the defendant.